UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| HERIBERTO TORIBIO-RUIZ,<br><br>                Petitioner,<br>    v.<br>ISIDRO BACA, *et al.*,<br><br>                Respondents. | Case No. 3:14-cv-00492-MMD-WGC<br><br>ORDER |

**I.　INTRODUCTION**

Before the Court are the second amended petition for writ of habeas corpus (ECF No. 31), respondents' motion to dismiss (ECF No. 40), petitioner's opposition (ECF No. 59), and respondents' reply (ECF No. 60). The Court finds that petitioner has not exhausted his available state-court remedies for all his grounds for relief. The Court grants the motion in part.

**II.　DISCUSSION**

Respondents first argue that in grounds 2 and 3 petitioner has not identified decisions of the Supreme Court of the United States. The Court has addressed this issue already. Again, 28 U.S.C. § 2254(d) does not impose a pleading requirement that a petitioner cite specific cases. This Court is able to analyze the decisions of the

Nevada Supreme Court under § 2254(d) even without citations in the second amended petition.¹

Second,² respondents argue that petitioner has failed to develop the factual basis for the claim alleged in ground 4(b). Such a failure, if true, would affect this Court's ability to order an evidentiary hearing and this Court's analysis on the merits. However, it is not an issue that the Court would address on a motion to dismiss.

Third, respondents argue that grounds 1[b] and 2[g] are frivolous.²ᵃ The Court rejects respondents' argument for the reasons stated at pages 16-17 of the opposition. (ECF No. 59.)

Fourth, respondents argue that petitioner has not exhausted his state-court remedies for grounds 4(b), 4(c), 4(d), 4(e), 5, and 6. Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. 28 U.S.C. § 2254(b). To exhaust a ground for relief, a petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

Petitioner acknowledges that all the challenged grounds are unexhausted. Petitioner and respondents agree that grounds 4(b), 4(d), 4(e), 5, and 6 are not exhausted because petitioner did not raise the issues contained in those grounds on appeal from the denial of his post-conviction state habeas corpus petition.³

---

¹Ground 2 is a claim that petitioner was denied his right to present a complete defense. Ground 3 contains multiple claims of prosecutorial misconduct. The rights at issue are hardly novel. Counsel for petitioner, counsel for respondents, and the court have addressed such claims many times over the years. The Supreme Court decisions underlying grounds 2 and 3, they are, among other cases, *California v. Trombetta,* 467 U.S. 479 (1984) (ground 2), and *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 643 (1974) (ground 3).

²The Court addresses respondents' arguments out of the order presented.

²ᵃThe Court uses brackets instead of parentheses because petitioner did not plead grounds 1 and 2 with divisions.

³The Court will address ground 4(c) separately.

2

Petitioner asks the Court to consider the grounds procedurally defaulted and then asks the Court to excuse those procedural defaults. First, he states that if he returned to state court, he would be subject to the time bar of NRS § 34.726(1) and the successive-petition bar of NRS § 34.810. Second, although those statutes allow for a showing of cause and prejudice to excuse their operation, he states that he cannot make that showing in state court. Normally, the Court would not accept petitioner's argument. With one exception, Nevada's standards for cause and prejudice are the same as the federal standards. However, petitioner states that his only arguments for cause and prejudice is the ineffective assistance of his initial post-conviction counsel. (ECF No. 59 at 6.[4])

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf. Miller–El v. Cockrell*, 537 U.S. 322 (2003) (describing standards for certificates of appealability to issue).

*Martinez v. Ryan*, 566 U.S. 1, 14 (2012). The Court later held that *Martinez* applies to procedurally defaulted claims of ineffective assistance of trial counsel in states that technically allow a person to raise an ineffective-assistance claim on direct appeal but actually provide no meaningful opportunity to develop the claim. *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). Nevada generally requires a person to raise claims of ineffective assistance of counsel in state court through a post-conviction habeas corpus petition, unless the state district court had developed the facts of the claim before the filing of the direct appeal. *Gibbons v. State*, 634 P.2d 1214 (Nev. 1981). The Nevada

---

[4]Respondents note correctly that petitioner also can bypass a procedural default by showing a fundamental miscarriage of justice because he is actually innocent of the crimes. Respondents also note correctly that petitioner only argues that he can show cause, and that petitioner is silent about any claim of actual innocence. (ECF No. 60 at 5 n.6.) The Court takes petitioner's silence as an admission that he has no argument for actual innocence.

3

Supreme Court has declined to follow *Martinez*, and it does not allow ineffective assistance of post-conviction counsel to be cause to excuse the procedural bars of § 34.726 and § 34.810. *Brown v. McDaniel*, 331 P.3d 867, 870-75 (Nev. 2014).

*Martinez* does not apply to grounds 4(b), 4(d), 4(e), 5, and 6. Petitioner raised these claims in his proper-person post-conviction habeas corpus petition. The claims were not exhausted because counsel on appeal from the denial of the petition did not raise them before the Nevada Supreme Court. (*See* Exh. 209 (ECF No. 53-32).) *Martinez* does not apply to "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . ." 566 U.S. at 16.[5]

*Martinez* also does not apply to ground 5 for another reason. Ground 5 is a claim of ineffective assistance of appellate counsel. *Martinez* does not extend to a procedurally defaulted claim of ineffective assistance of appellate counsel. *Davila v. Davis,* 137 S. Ct. 2058 (2017).

Ground 4(c) is not exhausted for a different reason. In the second amended petition, petitioner alleged that he presented the issue now in ground 4(c) in his initial, proper-person post-conviction habeas corpus petition. (ECF No. 31 at 29.) Now, after respondents moved to dismiss, petitioner states that ground 4(c) never was raised in the state-court post-conviction proceedings. (ECF No. 59 at 3.) Petitioner's second statement is correct. The closest that petitioner came to raising the issue in ground 4(c) is in ground 5 of his proper-person state habeas corpus petition. In that ground, petitioner alleged that trial counsel provided ineffective assistance "at numerous instances and for numerous reasons." (Exh. 101 (ECF No. 51-11 at 10).) That bare claim contained no facts and could not be a fair presentation of the issue now contained

---

[5]In the state-court evidentiary hearing, petitioner waived the issue now contained in ground 4(b). The state district court told petitioner that the hearing was the time to present any evidence in support of the claim, and petitioner had no evidence. However, nothing precluded petitioner from raising the claim on appeal from the denial of the petition. It probably would not have succeeded, but it was not prohibited. Ground 4(b) is unexhausted because it was not raised with the Nevada Supreme Court, not because it was not raised at any level of the state courts.

4

in ground 4(c). Ground 4(c) is unexhausted because it was not presented at any level of the state post-conviction proceedings. Ground 4(c) also is procedurally defaulted because, as noted above, petitioner admits that he has no arguments for cause and prejudice that the Nevada state courts would accept, and the Court takes petitioner's silence on the question of actual innocence as an admission that he has no argument for actual innocence. However, unlike the other unexhausted grounds, the Court needs to conduct a *Martinez* analysis on ground 4(c) because the failure to exhaust occurred in the initial post-conviction proceedings, not on appeal from the denial of the post-conviction petition.

Petitioner was charged with three counts of sexual misconduct upon two girls. For the victim B.S., he was charged with one count of sexual assault on a child and one count of lewdness with a child under the age of fourteen years. For the victim L.M., he was charged with one count of lewdness with a child under the age of fourteen years. (Exh. 6 (ECF No. 42-6).) Juan Sanchez was the father of one girl and the stepfather of the other girl. The police, suspecting that petitioner had abused the girls, had Sanchez talk to petitioner on the phone. Jovita Castaneda was Sanchez's mother and petitioner's girlfriend. After petitioner was charged formally with the crimes, defense counsel contacted Castaneda, who then was living out of state. At first, Castaneda seemed willing to testify for the defense. Later, defense counsel learned from the prosecutor that Castaneda was not willing to testify for the defense, so defense counsel used formal procedures to compel Castaneda's attendance at trial. Castaneda testified for the defense as a hostile witness. On cross-examination, Castaneda testified that she was in petitioner's residence when Sanchez and petitioner spoke. The prosecutor asked if Castaneda had overheard petitioner say anything to Sanchez. Castaneda said, "I only heard that he said, 'Forgive me,' but I don't know anything." (Exh. 54 at 22 (ECF No. 47-4, at 23).)[6] Defense counsel immediately objected. She stated first, and incorrectly, that

---

[6]This is a translation. Castaneda testified through an interpreter. Sanchez testified that he and petitioner spoke in Spanish.

5

1  the statement was hearsay, and then that Castaneda's testimony was the first time that
2  she had learned about the "forgive me" statement. In a hearing outside the presence of
3  the jury, defense counsel moved for a mistrial. The prosecutor stated that before the
4  trial resumed that morning he had learned from Castaneda that petitioner had said
5  "forgive me." Defense counsel called Castaneda as a witness after lunch, but the
6  prosecutor did not disclose to defense counsel what he had learned that morning. The
7  judge instructed defense counsel to file a written motion the next morning, and
8  Castaneda's testimony continued. The prosecutor's continued cross-examination was
9  brief, and he did not refer to the "forgive me" comment. (Exh. 53 at 54-55 (ECF No. 47-3
10 at 55-56.)

The next morning, after defense counsel had filed the motion for mistrial, the district court held it in abeyance and directed the trial to continue, with an evidentiary hearing to be held after the trial, if necessary. (Exh. 55 at 3 (ECF No. 47-5 at 4).) Defense counsel then stated:

> The holding in abeyance, I understand the Court's decision. It does put the defense in a somewhat precarious position. But perhaps I can somewhat explain my thought process for the record, so the Court is aware of what's going on. If this Court ultimately denies a mistrial, then I will not be recalling Jovita Castaneda. I won't for a couple of reasons, which will be obvious. I have been blind-sided; I don't want to be in that position for that to happen again. The only way I would be able to refute her testimony would be to call one of the participants to the stand. My client is going to be testifying, of course he'll say he never said "Please forgive me." I probably won't even ask that question, because I don't want to draw any additional attention to what I believe to be false testimony.
>
> In addition to that, the only other way I could refute that is to call Juan Sanchez to ask Juan Sanchez did in fact Mr. Toribio-Ruiz ever say "Please forgive me." I'd be in the exact same position with Juan Sanchez as I am with Jovita Castaneda. He won't talk to us, because we attempted to talk to him a long time ago, and he said no, thank you. And that's fine, and we respect that. Not knowing what the witness is going to say when I put him on the stand obviously imposes a great risk. That's especially true in a case like this, where the witness has obvious bias against the defendant, has obvious dislike toward the defendant.
>
> So there's no way I can refute that if a mistrial is denied. I have considered those options. I initially considered attempting to subpoena Juan Sanchez, but in retrospect I don't think there's any way I can fix what I believe to be the error. So I want the court to be aware and the record to be aware, as this might ultimately go up on appeal, as to why I'm not going to be doing

6

> anything as far as trying to refute it. I don't think I can. I think once it's out there, there's nothing I can do. The only efforts I make would potentially expose my client to being blind-sided once again.

(Exh. 55 at 3-5 (ECF No. 47-5 at 4-6).) The trial continued, and the jury found petitioner guilty.[7]

Sanchez testified first at the post-trial evidentiary hearing. At the request of Detective Lampert, he called petitioner on the phone. Sanchez testified that petitioner did say "forgive me," but he did not write this statement in his notes because he was speaking in Spanish with petitioner but writing in English. (Exh. 69 at 15-16 (ECF No. 49-8 at 16-17).) Sanchez then testified that in his conversation with Detective Lampert after the telephone conversation with petitioner, he did not mention the "forgive me" comment to Detective Lampert, possibly because he spaced it. (*Id.* at 16 (ECF No. 49-8 at 17).) The prosecutor asked Sanchez about a conversation that the two had after Castaneda's trial testimony. Sanchez testified that the prosecutor had asked him if petitioner had ever said that he did it and if he ever asked Sanchez to forgive him. (*Id.* at 18 (ECF No. 49-8 at 19).) Sanchez then testified that he only remembered hearing the "forgive me" statement as a result of the question that the prosecutor asked him. (*Id.* at 20 (ECF No. 49-8 at 21).) On cross-examination, Sanchez re-affirmed that Detective Lampert hoped that the telephone conversation between Sanchez and petitioner would lead to petitioner saying something that would indicate that he was guilty of the crimes. (*Id.* at 22 (ECF No. 49-8 at 23).) Sanchez agreed that "forgive me" would be pretty damning, and yet he did not write it down, nor did he tell the detective. (*Id.* at 27 (ECF No. 49-8 at 28).) He never told Steven Barker, the prosecutor, about the comment in all the times that he met the prosecutor, until after Castaneda's testimony. (*Id.* at 29 (ECF No. 49-8 at 30).)

///

///

---

[7]The trial court set aside the verdict and dismissed the count of lewdness upon B.S. because it was redundant to the verdict of guilty of sexual assault upon B.S. (Exh. 79 at 9 (ECF No. 50-5 at 10).)

7

Castaneda then testified at the post-trial evidentiary hearing. She maintained that she had heard petitioner say "forgive me" on the telephone. She also testified that she had told both the prosecutor and the defense counsel about the statement. (Exh. 69, at 63 (ECF No. 49-8, at 64).)

The trial court permitted supplemental briefing and then held a hearing for argument on the motion. Defense counsel noted that the prosecutor had argued in a supplemental brief that defense counsel could have, but did not, cross-examined Castaneda at trial and convinced the jurors that Castaneda was lying. Defense counsel then stated:

> But that's not the point. I made a tactical decision that this woman was a time bomb, she had already exploded once, and I wasn't going to let her explode again and hurt my client further. God only knows what else she was going to make up in order to make sure this man got convicted. So the decision I made was I'm not touching it, because I don't know what this woman is going to say. And Mr. Barker apparently does. So my decision was just to stay away from it.

(Exh. 75 at 15 (ECF No. 50-1 at 16).) The prosecutor noted that after defense counsel had moved for a mistrial, he did not question Castaneda further about the "forgive me" statement and made no reference to it in his arguments. (*Id.* at 35-36 (ECF No. 50-1 at 36-37).)

The trial court denied the motion for a mistrial or a new trial. The trial court noted, "Ms. Lunt [defense counsel] limited her cross-examination of Castaneda by not inquiring into the overheard statement as a tactical decision." (Exh. 77 at 4 (ECF No. 50-3 at 5).)

> [W]here (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013). There is no dispute that the post-conviction habeas corpus petition was the initial review proceeding with respect to the

///

///

issue in ground 4(c). For the moment, the Court assumes that the claim in ground 4(c) must have been raised in a post-conviction habeas corpus petition.[8]

The question of whether ground 4(c) raises a substantial claim of ineffective assistance of counsel and whether post-conviction counsel was ineffective for not raising the claim in the state post-conviction proceedings are related. In ground 4(c) petitioner alleges:

> Counsel was ineffective for failing to question Toribio-Ruiz about the alleged apology. Castaneda's testimony about the statement was highly damaging to Toribio-Ruiz. However, counsel did nothing to mitigate the impact. <u>Toribio-Ruiz had a legitimate explanation for whatever apology Castaneda may have believed she heard during the conversation. It was critical for the jury to have heard this evidence. But counsel did not present it.</u>

---

[8]The Nevada Supreme Court has stated, "This court has consistently concluded that it will not entertain claims of ineffective assistance of counsel on direct appeal." *Corbin v. State*, 892 P.2d 580, 582 (Nev. 1995) (citing *Gibbons v. State*, 634 P.2d 1214 (Nev. 1981). However, *Gibbons* noted that if the district court had held an evidentiary hearing at which the counsel had testified, before the direct appeal commenced, then the Nevada Supreme Court might have had something more than conjecture on which to issue a decision. 634 P.2d at 1214.

This case came close to that dictum. The trial court did hold an evidentiary hearing. Defense counsel gave her reasons why she decided not to refer to the "forgive me" statement: She thought that Castaneda and Sanchez were lying, she had no way to prove through further examination of them that they were lying, and she did not want to bring any more attention to the "forgive me" comment. In denying the motion for a mistrial or a new trial, the trial court noted that defense counsel's choice was tactical. Defense counsel herself did not represent petitioner on direct appeal, but her office, the Washoe County Public Defender, did. With a change in representation, the court questions whether the Nevada Supreme Court would have entertained the claim of ineffective assistance of counsel on direct appeal.

However, the *Gibbons* dictum remains just that. To the best of this court's knowledge, the Nevada Supreme Court has not entertained on direct appeal a claim of ineffective assistance of counsel. Some states do have procedures for raising on direct appeal claims of ineffective assistance of counsel. For example, Indiana allows a person to move to suspend a direct appeal while he files a post-conviction petition that raises claims of ineffective assistance of counsel and then to resume the appeal on both ineffective-assistance issues and the other issues if the petition is denied. *Woods v. State*, 701 N.E.2d 1208, 1219-20 (Ind. 1998) (citing *Davis v. State*, 368 N.E.2d 1149 (Ind. 1977), and *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993)). Ohio requires a claim of ineffective assistance of counsel to be raised on direct appeal if the claim can be determined without resort to evidence outside of the record. *State v. Cole*, 443 N.E.2d 169 (Ohio 1982). The Nevada Supreme Court's decisions instructing people to raise ineffective-assistance claims in post-conviction habeas corpus petitions, and the lack of any stated procedure for raising ineffective-assistance claims on direct appeal, leads this court to conclude that petitioner had no meaningful opportunity to raise the claim now contained in ground 4(c) on direct appeal.

ECF No. 31, at 33 (emphasis added). What is this explanation? Petitioner does not allege in the second amended petition what the explanation is. Petitioner does not allege in the opposition to the motion to dismiss what the explanation is. Petitioner has the burden of proof in federal habeas corpus, and he has the burden of showing cause and prejudice to overcome a procedural default. Yet, he still does not say what this explanation is. More importantly, petitioner does not allege that he told either defense counsel or post-conviction counsel what this explanation is. The court recited at length defense counsel's efforts to obtain a mistrial or a new trial to show that defense counsel believed from the moment Castaneda testified about the "forgive me" comment that both Castaneda and Sanchez lied about that comment.[9] Petitioner has a duty to be candid with counsel. *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). If petitioner himself knew that he had said "forgive me" to Sanchez, and that he had an explanation that put the comment into a more favorable light, then he needed to tell that to defense counsel *before* defense counsel started arguing that the "forgive me" comment was a complete lie. Likewise, in the state post-conviction proceedings, petitioner needed to tell his attorney that he did, in fact, say "forgive me" and had a good explanation why he said it. Otherwise, post-conviction counsel reasonably could have looked at the record and concluded that defense counsel did all that she could to obtain a mistrial or a new trial. In other words, post-conviction counsel did not perform deficiently because, for all he knew, the record showed that defense counsel did not perform deficiently. Petitioner has not shown cause to excuse the procedural default of ground 4(c).

In sum, the second amended petition (ECF No. 31) is mixed, containing both claims exhausted in state court and claims not exhausted in state court, and it is subject to dismissal. *See Rose v. Lundy*, 455 U.S. 509, 521-22 (1982); *Szeto v. Rushen*, 709 F.2d 1340, 1341 (9th Cir. 1983).

---

[9] Indeed, the claim in ground 3 that the prosecutor committed misconduct by inviting Castaneda to testify about the "forgive me" comment necessarily argues that Castaneda was lying and that the prosecutor had reason to believe that Castaneda was lying.

### III. CONCLUSION

It is therefore ordered that respondents' motion to dismiss (ECF No. 40) is granted in part. Grounds 4(b), 4(c), 4(d), 4(e), 5, and 6 are unexhausted.

It is further ordered that petitioner shall have thirty (30) days from the date of entry of this order to file a motion for dismissal without prejudice of the entire petition, for partial dismissal of grounds 4(b), 4(c), 4(d), 4(e), 5, and 6, or for other appropriate relief. Within ten (10) days of filing such motion, petitioner must file a signed declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 that he has conferred with his counsel in this matter regarding his options, that he has read the motion, and that he has authorized that the relief sought therein be requested. Failure to comply with this order will result in the dismissal of this action.

DATED THIS 18th day of September 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE