UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| HERIBERTO TORIBIO-RUIZ, | Case No. 3:14-cv-00492-MMD-WGC |
|---|---|
| Petitioner, | ORDER |
| v. | |
| ISIDRO BACA, *et al.*, | |
| Respondents. | |

**I.   SUMMARY**

This is a habeas corpus action under 28 U.S.C. § 2254. Currently before the Court are Respondents' motion to dismiss Petitioner Heriberto Toribio-Ruiz's second amended petition for writ of habeas corpus ("Petition") (ECF No. 73).[1] The Court finds that grounds 4(b), 4(c), 4(d), 4(e), 5, and 6 in the Petition are procedurally defaulted. The Court also finds that Toribio-Ruiz has not shown good cause and prejudice to excuse the procedural default. The Court thus grants the motion to dismiss.

**II.   BACKGROUND**

Toribio-Ruiz was charged with three counts of sexual misconduct upon two girls, B.S. and L.M. Regarding B.S., he was charged with one count of sexual assault on a child and one count of lewdness with a child under the age of 14 years. Regarding L.M., he was charged with one count of lewdness under the age of 14 years. (ECF No. 42-6.) A jury found Toribio-Ruiz guilty of all three counts. (ECF No. 49-3, 49-4, 49-5.) The trial court dismissed the count of lewdness regarding B.S. because it was redundant to the count of sexual assault regarding B.S. (ECF No. 50-5 at 10.) The trial court convicted Toribio-Ruiz

---

[1] The Court has also reviewed Toribio-Ruiz's response (ECF No. 80) and Respondents' reply (ECF No. 81).

on the other two counts. (ECF No. 50-13.) Toribio-Ruiz appealed, and the Nevada Supreme Court affirmed. (ECF No. 51-10.)

Toribio-Ruiz filed his first post-conviction habeas corpus petition in the state district court. (ECF No. 51-11.) The state district court appointed counsel. (ECF No. 51-16.) About a month and a half after appointment of counsel, Toribio-Ruiz filed a proper-person amended/supplemental habeas corpus petition. (ECF No. 52-1.) After some procedural confusion, Toribio-Ruiz filed a counseled supplement to the petition. (ECF No. 52-52.) The state district court held an evidentiary hearing. (ECF No. 53-1.) The state district court then denied the petition. (ECF No. 53-4.) Toribio-Ruiz appealed, and the Nevada Supreme Court affirmed. (ECF No. 53-37.)

Toribio-Ruiz then commenced this action. The Court appointed the Federal Public Defender to represent Toribio-Ruiz. Toribio-Ruiz filed a counseled first amended petition and then a counseled second amended petition. (ECF No. 13, 31.) Respondents filed a motion to dismiss. (ECF No. 40.) The Court granted the motion in part, finding that grounds 4(b), 4(c), 4(d), 4(e), 5, and 6 were not exhausted. (ECF No. 61.) The Court, with reluctance, granted Toribio-Ruiz's request to stay the action while he exhausted those grounds in state court. (ECF No. 66.)

Toribio-Ruiz filed his second post-conviction habeas corpus petition in the state district court. (ECF No. 69-1.) The state district court dismissed the petition because it was untimely under NRS § 34.726(1) and successive under NRS § 34.810(1)(b)(2). (ECF No. 69-5.) Toribio-Ruiz appealed. The Nevada Court of Appeals affirmed. (ECF No. 69-9.)

Toribio-Ruiz then returned to this Court, which reopened the action. (ECF No. 71.) Respondents filed their renewed motion to dismiss. (ECF No. 73.)

**III.    LEGAL STANDARD**

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state-law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). The grounds for dismissal upon which the Nevada Supreme Court relied in this case are adequate and independent state rules. *Vang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003) (NRS § 34.810); *Loveland v. Hatcher*, 231 F.3d 640 (9th Cir. 2000) (NRS § 34.726); *Moran v. McDaniel*, 80 F.3d 1261 (9th Cir. 1996) (NRS § 34.726).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Carrier*, 477 U.S. at 488.

To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).

If a procedurally defaulted claim is a claim of ineffective assistance of trial counsel, then the ineffective assistance of counsel in the initial state post-conviction proceedings, or the absence of such counsel, can be cause to excuse the procedural default. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). The petitioner also would need to show that the procedurally defaulted claim of ineffective assistance of trial counsel is a substantial claiming, meaning "that the [petitioner] must demonstrate that the claim has some merit." *Id.* Also, state law, either expressly or as a practical matter, must require that the petitioner raise claims of ineffective assistance of counsel in the initial state post-conviction proceedings and not on direct appeal. *Id.*

///

///

## IV. DISCUSSION

### A. Grounds 4(b), 4(d), 4(e), and 6 are procedurally defaulted

These grounds were not exhausted because Toribio-Ruiz did not appeal their denial to the Nevada Supreme Court. (ECF No. 61 at 2.) They now are procedurally defaulted because the state courts used state-law procedural bars to deny relief. The Court ruled, anticipatorily, that *Martinez* cannot excuse the procedural default because the failure to exhaust, and thus the default, occurred when Toribio-Ruiz did not appeal the denial of the grounds, and *Martinez* does not apply when post-conviction appellate counsel causes a procedural default (ECF No. 61 at 4.) *See also Martinez v. Ryan*, 566 U.S. 1, 16 (2012).

Toribio-Ruiz asserts that the Court, in its earlier order, did not examine what post-conviction counsel in the state district court did with these grounds. The Court is not persuaded. Toribio-Ruiz raised each of these grounds in his initial proper-person state post-conviction habeas corpus petition. Ground 4(b)'s equivalent was ground 3. (ECF No. 51-11 at 9.) Ground 4(d)'s equivalent was ground 15. (ECF No. 51-11 at 13.) Ground 4(e)'s equivalent was ground 20. (ECF No. 51-11 at 14-15.) Ground 6's equivalent was ground 13. (ECF No. 51-11 at 12.) Toribio-Ruiz argues that state post-conviction counsel abandoned these claims in the state district court, and, in the case of ground 4(b), waived the claim at the evidentiary hearing. Appointed counsel did not re-allege these grounds in the counseled supplemental petition. (*See* ECF No. 52-52.) However, that was not the end of those grounds. Under Nevada law, appointed counsel may file a *supplement* to the petition. NRS § 34.750(3). The terminology is important. The supplement does not supersede the claims alleged in the initial proper-person petition. The supplement alleges claims in addition to the claims alleged in the initial proper-person petition. The claims in the initial state post-conviction petition still were pending. The state district court understood this. It denied all the claims in the initial proper-person petition on their merits. (ECF No. 53-4 at 4-9.)

The failure to exhaust, and the subsequent procedural default, occurred when post-

4

conviction appellate counsel did not raise the denial of those grounds on appeal. As noted above, *Martinez* does not apply in this situation. *Martinez,* 566 U.S. at 16. A failure of post-conviction appellate counsel to raise an issue on post-conviction appeal is not cause to excuse a procedural default, because a person does not have a constitutional right to post-conviction counsel and thus does not have a constitutional right to effective assistance of post-conviction counsel. *Coleman*, 501 U.S. at 752 (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)).

As a counter-example, if initial post-conviction counsel did everything that Toribio-Ruiz argues now, but the state district court still denied the petition and post-conviction appellate counsel still did not raise the denial of the grounds on appeal, then the grounds still would be procedurally defaulted and *Martinez* still would be inapplicable. This demonstrates that the default occurred in the appeal from the denial of the post-conviction petition, not due to any actions of initial post-conviction counsel. Consequently, the performance of initial post-conviction counsel cannot have caused the procedural default in this case.

For these reasons, the Court dismisses grounds 4(b), 4(d), 4€, and 6 as procedurally defaulted.

**B.     Ground 4(b), in the alternative, is not a substantial claim of ineffective assistance of trial counsel**

Ground 4(b) is a claim that trial counsel provided ineffective assistance by not calling as a witness an expert who reviewed the report of the examining nurse and determined that she was incorrect in her findings of physical injury. Ground 4(b) has one fact in its procedural history that it does not share with the other procedurally defaulted grounds. This claim was ground 3 in Toribio-Ruiz's initial, proper-person state post-conviction petition. (ECF No. 51-11 at 9.) At the state-court evidentiary hearing, the court asked post-conviction counsel whether he would ask trial counsel about that claim. (ECF No. 53-1 at 29-30.) Post-conviction counsel said, "Well, Your Honor, I think, having reviewed the authority presented on that claim and having more fully reviewed what

5

occurred at that time as far as the examination of the girls and the fact that no testimony was presented by the State as to any injury to the girls by any expert witness, then I'll withdraw that particular claim at this time." (ECF No. 53-1 at 30.) The state district court still denied the ground on its merits. (ECF No. 53-4 at 5.) In the event that the withdrawal of the claim at the evidentiary hearing, and not the decision to not appeal the denial on the merits, is the reason for the failure to exhaust and subsequent procedural default, the Court has considered ground 4(b).

The issue of physical evidence of abuse was discussed tangentially during the trial. Jovita Castaneda, a defense witness, testified on cross-examination that she was present with Toribio-Ruiz when he spoke on the telephone with Juan Sanchez about the charges. Sanchez was Castaneda's son and one of the girls' father. The police asked Sanchez to call Toribio-Ruiz and talk about the case in hope of Toribio-Ruiz making incriminating statements. Sanchez took notes during the telephone conversation, and a detective was present with him. Castaneda testified, "I only heard [Toribio-Ruiz] say, 'Forgive me,' but I don't know anything." (ECF No. 47-4 at 23.) This testimony surprised the defense. This testimony did not surprise the prosecution, because the prosecutor met with Castaneda before she testified, and she told the prosecutor about Toribio-Ruiz's statement. The defense moved for a mistrial based upon prosecutorial misconduct.[2]

Castaneda's testimony by itself has nothing to do with ground 4(b). However, during one of the hearings on the motion for mistrial, defense counsel discussed as background an earlier dispute over the results of the physical examination by Nurse Lily Clarkson. Clarkson determined that at least one of the girls had physical indications that substantiated the allegation of abuse. The defense hired an expert to review Clarkson's findings. The expert determined that nothing in the examinations indicated physical injuries. The expert also said that the lack of any physical finding would not be

---

[2]This testimony was the subject of ground 4(c). The Court discussed trial counsel's efforts to have the court declare a mistrial more fully in its order granting in part Respondents' initial motion to dismiss. (ECF No. 61.)

1 determinative, because a physical examination would not find evidence of digital
2 penetration of a 5-year-old girl months after the occurrence. (ECF No. 19-5 at 13-14.)

3       Defense counsel then referred to an earlier hearing to determine the admissibility
4 of Dr. Deborah Davis as an expert on false confessions. (*Id.*) At that hearing, the
5 prosecutor asked Dr. Davis if she had any evidence that the girls' accusations of Toribio-
6 Ruiz abusing them were false. Dr. Davis noted that the physical examinations of the girls
7 were evidence that the girls' accusations were false. The examinations supposedly found
8 signs of physical abuse, but the examinations were conducted many months after Toribio-
9 Ruiz had any contact with the girls, meaning that Toribio-Ruiz could not have been the
10 person who caused the abuse, and thus the girls' accusations of Toribio-Ruiz were false.
11 (ECF No. 16-18 at 33-34.)

12       Returning to the hearing on the "forgive me" testimony, defense counsel noted that
13 after Dr. Davis testified at the earlier hearing, the prosecutor then had Clarkson's findings
14 checked independently and learned that Clarkson's conclusions were incorrect. (ECF No.
15 19-5 at 15.) The prosecutor then decided not to call Clarkson as a witness. (*Id.*)

16       At trial, the prosecution did not present any physical evidence of abuse. The
17 prosecution did call as a witness Detective Curtis Lampert, who interviewed Toribio-Ruiz
18 and to whom Toribio-Ruiz confessed. On cross-examination about his interrogation
19 technique, Lampert admitted that his statements to Toribio-Ruiz about evidence of
20 redness and abrasions were lies. (ECF No. 17-2 at 148-50.)

21       If post-conviction counsel's waiver of the claim at the state district court was what
22 caused the procedural default of ground 4(b), then the Court concludes that ground 4(b)
23 is not a substantial claim of ineffective assistance of trial counsel. The Court also
24 concludes that post-conviction counsel did not provide ineffective assistance by
25 withdrawing the claim.

26       First, the defense expert would not have rebutted any evidence of physical injury.
27 The prosecution decided not to have Clarkson testify. Without Clarkson's testimony, there
28 was no evidence of physical injury presented to the jury, and thus no evidence for the

defense expert to rebut. Trial counsel cannot have performed deficiently by failing to rebut non-existent evidence. Furthermore, state post-conviction counsel, quoted above, gave the lack of physical evidence in the prosecution's case as a reason why he withdrew the claim. State post-conviction counsel thus did not provide ineffective assistance by withdrawing the claim.

Second, trial counsel reasonably could have concluded that the defense expert's testimony could have been harmful to the defense. The defense expert did not simply conclude that the report of the examination showed no physical injury and that Clarkson was wrong. The defense expert also noted that the time between Toribio-Ruiz's last contact with the girls and the examinations of the girls was enough for any physical injuries to have healed without any evidence of physical injuries remaining. If trial counsel called the expert to testify, the expert almost certainly would have testified on cross-examination that injuries, if any, would have healed by the time of the examinations. Trial counsel would have put evidence damaging to Toribio-Ruiz before the jury—that Toribio-Ruiz might have abused the girls, but the evidence was not preserved because the girls waited too long to speak up. Trial counsel would have turned a strength of the defense—no physical evidence of abuse—into an ambiguity at best. The Court cannot say that trial counsel performed deficiently by avoiding the issue.

Third, trial counsel did use the lack of physical evidence as a strong point of the defense. Detective Lampert admitted on cross-examination that he lied to Toribio-Ruiz about the existence of physical evidence in his efforts to get Toribio-Ruiz to confess to the crime. Later, Dr. Davis, an expert on interrogations, testified how interrogators try to persuade the interrogatee that overwhelming evidence of guilt exists to obtain a confession, and that, sometimes, an interrogatee might think that the only way to salvage anything is to confess falsely. (ECF No. 48-4.) If counsel introduced the expert testimony on the lack—and irrelevance—of physical evidence, then trial counsel risked undercutting her own strategy. The jury might have been left thinking that the detective lied but no harm occurred because the evidence of Toribio-Ruiz's abuse of the girls had healed by the time

of the interrogation.

### C. Grounds 4(c) and 5 are procedurally defaulted

Toribio-Ruiz does not contest the procedural default of grounds 4(c) and 5. Ground 5 is a claim of ineffective assistance of appellate counsel, and *Martinez* does not apply to it. *Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017). The Court dismisses ground 5 as procedurally defaulted.

The Court reviewed ground 4(c) under *Martinez* in its order granting in part Respondents' initial motion to dismiss. The Court found that ground 4(c) was not a substantial claim of ineffective assistance of counsel and that state post-conviction counsel did not perform deficiently by not raising it in the state post-conviction proceedings. (ECF No. 61 at 4-10.)

The Court needs to correct a statement that it made in its earlier order, but the correction does not change the conclusion. As stated in more detail in the earlier order, Jovita Castaneda, a witness for the defense, surprised the defense by testifying that she overheard Toribio-Ruiz say "forgive me" in a phone call to Juan Sanchez. Ground 4(c) is a claim that trial counsel provided ineffective assistance by not calling Toribio-Ruiz as a witness to testify about his explanation for the apology that Castaneda overheard. (ECF No. 31 at 33.) The Court noted that Toribio-Ruiz did not allege what the explanation was. (ECF No. 61 at 10.) However, Toribio-Ruiz did allege earlier in ground 4(c):

> If asked Toribio-Ruiz would have explained that to the extent that he apologized about anything during the conversation with Sanchez it was related to his relationship with Castaneda, who is Sanchez's mother. He and Castaneda had an on-again-off-again relationship. Sanchez seemed to be the one who was most bothered by their unstable relationship. Toribio-Ruiz was solely seeking Sanchez's forgiveness for the instability in his relationship with Castaneda.

(ECF No. 31 at 33.) To the extent that the Court stated that Toribio-Ruiz had not alleged the explanation in the Petition, the Court was incorrect. However, that correction does not change the Court's ultimate conclusion, which the Court repeats here:

> More importantly, petitioner does not allege that he told either defense counsel or post-conviction counsel what this explanation is. The court recited at length defense counsel's efforts to obtain a mistrial or a new trial to show

>that defense counsel believed from the moment Castaneda testified about the "forgive me" comment that both Castaneda and Sanchez lied about that comment. Petitioner has a duty to be candid with counsel. *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). If petitioner himself knew that he had said "forgive me" to Sanchez, and that he had an explanation that put the comment into a more favorable light, then he needed to tell that to defense counsel *before* defense counsel started arguing that the "forgive me" comment was a complete lie. Likewise, in the state post-conviction proceedings, petitioner needed to tell his attorney that he did, in fact, say "forgive me" and had a good explanation why he said it. Otherwise, post-conviction counsel reasonably could have looked at the record and concluded that defense counsel did all that she could to obtain a mistrial or a new trial. In other words, post-conviction counsel did not perform deficiently because, for all he knew, the record showed that defense counsel did not perform deficiently. Petitioner has not shown cause to excuse the procedural default of ground 4(c).

(ECF No. 61 at 10) (footnote omitted) (emphasis in original). The Court thus dismisses ground 4(c) as procedurally defaulted.

## V. CONCLUSION

It is therefore ordered that Respondents' renewed motion to dismiss (ECF No. 73) is granted. Grounds 4(b), 4(c), 4(d), 4(e), 5, and 6 are dismissed as procedurally defaulted.

It is further ordered that that Respondents will have 60 days from the date of entry of this order to file and serve an answer, which must comply with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner will have 45 days from the date on which the answer is served to file a reply.

DATED THIS 15th day of July 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE